# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - -

In re: JOHN DOMBEK III,                          :

      Debtor                                   :

- - - - - - - - - - - - - - - - - - - - - - - - - :  Case No. 11-40894

**HILDA L. SOLIS**, Secretary of Labor,          :
United States Department of Labor,               :  Chapter 7
                                                 :
      Plaintiff,                               :  Hon. Jack B. Schmetterer
    v.                                           :
                                                 :
**JOHN DOMBEK III,**                             :  Adv. No. 12-00565
                                                 :
      Defendant.                               :

- - - - - - - - - - - - - - - - - - - - - - - - - -



## FINDINGS OF FACT, CONCLUSIONS OF LAW, ~~AND JUDGMENT~~

### I.  FINDINGS OF FACTS

This matter is before the Court on the Secretary of Labor's motion for entry of default judgment against Defendant John Dombek III ("Defendant") pursuant to Federal Rule of Bankruptcy ("BR") 7055 and Federal Rule of Civil Procedure ("FRCP") 55.  An order of default was entered and all allegations of the complaint are thereby admitted.

1.      This adversary proceeding is brought by the Secretary of Labor ("Plaintiff" or "Secretary") pursuant to 11 U.S.C. § 523(a)(4) to recover money owed by Defendant to the following pension plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA"): the Wisconsin Tool and Stamping Company 401(k) Profit Sharing Plan and Trust (the "WTSC 401(k) Plan"), the J.D. Acquisition 401(k) Profit Sharing Plan and Trust (the "J.D. Acquisition 401(k) Plan"), and the JJD Industries Group Health Plan (the "Group Health Plan") (collectively, "Plans").

2.     As a result of Defendant's failure to answer or otherwise plead, the allegations in the Secretary's Complaint, apart from allegations of damages, are deemed admitted pursuant to BR 7008 and FRCP 8(b)(6). *See Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *In re Underly*, 2012 WL 2050235 *1, Adv. No. 12-00391, (Bankr. N.D. Ill. June 6, 2012). The facts regarding damages are established by the Declaration of Senior Investigator Ashley Romanacce in Support of Plaintiff's Motion for Default Judgment ("Declaration"), attached to Plaintiff's Motion for Default Judgment as Exhibit A.

**The WTSC 401(k) Plan**

3.     Defendant was the president and part owner of Wisconsin Tool and Stamping Company ("WTSC"), the sponsor of the WTSC 401(k) Plan. Defendant was an authorized signatory on WTSC's corporate accounts. Since 2008, Defendant has been responsible for determining what creditors, including the WTSC 401(k) Plan, would be paid by WTSC and when such payments would be made. Complaint ¶¶ 5, 6, 14, 17.

4.     The WTSC 401(k) Plan's governing documents, which were adopted by WTSC, provided in pertinent part that participants could make pre-tax contributions from their compensation to the WTSC 401(k) Plan in an amount up to the contribution limitations set by the Internal Revenue Code on a yearly basis. Since the inception of the WTSC 401(k) Plan in 2002, WTSC has withheld employee contributions from its employees' paychecks for contribution to the WTSC 401(k) Plan. Complaint ¶¶ 13, 15, 16.

5.     During the period from January 1, 2008, through September 17, 2010, WTSC withheld $20,176.57 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the WSTC 401(k) Plan. Complaint ¶ 18; Declaration ¶ 3(b).

2

6.    During the period from January 1, 2008, through September 17, 2010, Defendant

caused WTSC to retain the employee contributions it withheld from its employees' pay in its

own general assets and failed to ensure that the amounts withheld from its employees' pay were

remitted to the WTSC 401(k) Plan.  Complaint ¶ 19.

7.    During the period January 1, 2008, through September 17, 2010, WTSC withheld

$5,460.78 from its employees' pay in employee contributions to the WTSC 401(k) Plan and

failed to remit the amounts so withheld to the WTSC 401(k) Plan in a timely manner.  WTSC

retained in its own general assets the employee contributions withheld from its employees' pay

until they were remitted to the WTSC 401(k) Plan.  Complaint ¶ 20; Declaration ¶ 3(b).

8.    During the period from January 1, 2008, through September 17, 2010, Defendant

caused WTSC to retain employee contributions to the WTSC 401(k) Plan withheld from its

employees' pay and failed to ensure that the amounts withheld from its employees' pay were

remitted promptly to the WTSC 401(k) Plan.  Complaint ¶ 21.

9.    Through October 6, 2011, $1,253.50 accrued in lost opportunity costs for

unremitted and untimely remitted employee contributions to the WSTC 401(k) Plan.  Declaration

¶ 3(c).

**The J.D. Acquisition 401(k) Plan**

10.    Defendant was the president and part owner of J.D. Midland Chutes, Inc. d/b/a

J.D. Acquisition Corporation ("J.D. Acquisition"), the sponsor of the J.D. Acquisition 401(k)

Plan.  Defendant was an authorized signatory on J.D. Acquisition's corporate accounts.  Since

2008, Defendant has been responsible for determining what creditors, including the J.D.

Acquisition 401(k) Plan, would be paid by J.D. Acquisition and when such payments would be

made.  Complaint ¶¶ 7, 8, 25, 28.

11.     The J.D. Acquisition 401(k) Plan's governing documents, which were adopted by J.D. Acquisition, provided in pertinent part that participants could make pre-tax contributions from their compensation to the J.D. Acquisition 401(k) Plan in an amount up to the contribution limitations set by the Internal Revenue Code on a yearly basis.  Since the inception of the J.D. Acquisition 401(k) Plan in 2003, J.D. Acquisition has withheld employee contributions from its employees' paychecks for contribution to the J.D. Acquisition 401(k) Plan.  Complaint ¶¶ 24, 26, 27.

12.     During the period from January 1, 2008, through October 25, 2010, J.D. Acquisition withheld $1,929.98 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the J.D. Acquisition 401(k) Plan.  J.D. Acquisition retained in its own general assets the withheld employee contributions.  Complaint ¶ 29; Declaration ¶ 3(e)

13.     During the period from January 1, 2008, through October 25, 2010, Defendant caused J.D. Acquisition to retain the employee contributions in its own general assets and failed to ensure that the amounts withheld from its employees' pay were remitted to the Plan.  Complaint ¶ 30.

14.     During the period January 1, 2008, through October 25, 2010, J.D. Acquisition withheld $525.18 from its employees' pay in employee contributions to the J.D. Acquisition 401(k) Plan and failed to remit the amounts so withheld to the J.D. Acquisition 401(k) Plan in a timely manner.  J.D. Acquisition retained in its own general assets the employee contributions withheld from its employees' pay until they were remitted to the Plan.  Complaint ¶ 31; Declaration ¶ 3(f).

15.     During the period from January 1, 2008, through October 25, 2010, Defendant caused J.D. Acquisition to retain employee contributions to the J.D. Acquisition 401(k) Plan

4

withheld from its employees' pay and failed to ensure that the amounts withheld from its employees' pay were remitted promptly to the J.D. Acquisition 401(k) Plan. Complaint ¶ 32.

16.     Through October 6, 2011, $219.15 accrued in lost opportunity costs for unremitted and untimely remitted employee contributions to the J.D. Acquisition 401(k) Plan. Declaration ¶ 3(g).

**The Group Health Plan**

17.     Defendant was the president and part owner of JJD Industries, Inc., ("JJD Industries"), the sponsor of the Group Health Plan. Complaint ¶¶ 9, 10.

18.     JJD Industries transacted its business through several related companies, each of which was co-owned by Defendant, including: WTSC; Akorat Metal Fabricators, Inc./Smithco Fabricators, Inc. ("Akorat/Smithco"); J.D. Acquisition; and Pavo, Inc./Injection Plastics Corporation ("Pavo/Injection Plastics") (collectively, the "Related Companies"). Defendant was an authorized signatory on all of the Related Companies' corporate accounts. Since 2008, Defendant has been responsible for determining what creditors, including the Group Health Plan, would be paid by each of the Related Companies and when such payments would be made. Complaint ¶ 11, 37, 38.

19.     The Group Health Plan was originally effective as of March 1, 2007, through a fully-insured group health insurance contract with Blue Cross Blue Shield of Illinois. The purpose of the Group Health Plan was to provide health and dental benefits to the employees of all of JJD Industries' Related Companies. Since the inception of the Group Health Plan in 2007, premiums for the Group Health Plan were partially funded through weekly employee payroll deductions. Each Related Company was responsible for withholding contributions to the Group Health Plan from its own employees. Complaint ¶¶ 35, 36.

20.    During the period from May 6, 2010, through August 20, 2010, Akorat/Smithco withheld $15,867.85 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Akorat/Smithco retained in its own general assets the withheld employee contributions.  Complaint ¶ 39; Declaration ¶ 3(h).

21.    During the period from May 6, 2010, through August 20, 2010, Defendant caused Akorat/Smithco to retain the withheld employee contributions and failed to ensure that the amounts withheld from its employees pay were remitted to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Complaint ¶ 40.

22.    During the period from April 5, 2010, through August 20, 2010, J.D. Acquisition withheld $5,084.64 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  J.D. Acquisition retained in its own general assets the withheld employee contributions.  Complaint ¶ 42; Declaration ¶ 3(i).

23.    During the period from April 5, 2010, through August 20, 2010, Defendant caused J.D. Acquisition to retain the withheld employee contributions and failed to ensure that the amounts withheld from its employees pay were remitted to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Complaint ¶ 43.

24.    During the period from May 3, 2010, through August 20, 2010, WTSC withheld $20,381.13 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  WTSC retained in its own general assets the withheld employee contributions. Complaint ¶ 45; Declaration ¶ 3(j).

6

25.    During the period from May 3, 2010, through August 20, 2010, Defendant caused WTSC to retain the withheld employee contributions and failed to ensure that the amounts withheld from its employees pay were remitted to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Complaint ¶ 46.

26.    During the period from September 3, 2010, through September 17, 2010, Pavo/Injection Plastics withheld $229.94 from its employees' pay in employee contributions and failed to remit the amounts so withheld to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Pavo/Injection Plastics retained in its own general assets the withheld employee contributions.  Complaint ¶ 48; Declaration ¶ 3(k).

27.    During the period from September 3, 2010, through September 17, 2010, Defendant caused Pavo/Injection Plastics to retain the withheld employee contributions and failed to ensure that the amounts withheld from its employees pay were remitted to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Complaint ¶ 49.

28.    Through October 6, 2011, $2,074.98 accrued in lost opportunity costs for unremitted employee contributions to the Group Health Plan.  Declaration ¶ 3(*l*).

## II. CONCLUSIONS OF LAW

### A.  Jurisdiction and Venue

29.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a), which provides that federal district courts have "original and exclusive jurisdiction" of all cases arising under Title 11 of the United States Code.

30.    28 U.S.C. § 157(a) allows the district courts to refer cases under title 11 and proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges for their districts.  The District Court for the Northern District of Illinois has

made a reference of cases and proceedings filed under title 11 to the bankruptcy judges for its

district. Northern District of Illinois Operating Procedure 15(a); *In re Underly*, 2012 WL

2050235 at *2.

  31.  Under 28 U.S.C. § 157(b)(1) a bankruptcy judge to whom a case has been

referred may enter final judgment on core proceedings arising in the case and proceedings

involving determinations as to the dischargebility of particular debts are core proceedings. 28

U.S.C § 157(b)(2)(I); *In re Underly*, 2012 WL 2050235 at *2.

  32.  Venue of this adversary proceeding is proper in this judicial district pursuant to 28

U.S.C. § 1408.

## B. Defendant violated ERISA when he failed to ensure that employee contributions to the Plans were remitted and timely remitted

  33.  The Plans are employee benefit plans within the meaning of ERISA § 3(3), that

are subject to the provisions of Title I of ERISA pursuant to ERISA § 4(a). 29 U.S.C. §§

1002(3), 1003(a).

  34.  ERISA was designed "to protect the interests of participants in employee benefit

plans and their beneficiaries" and to "establish standards of conduct, responsibility, and

obligations for fiduciaries of employee benefit plans . . . by providing for appropriate remedies,

sanctions, and ready access to Federal courts. 29 U.S.C. § 1001(b). To carry out these purposes,

ERISA regulates virtually all aspects of qualified employee benefit plans, including reporting

and disclosure (29 U.S.C. §§ 1021-1031); participation and vesting (*id.* §§ 1051-1061); funding

(*id.* 1081-1086); fiduciary responsibility (*id.* §§ 1101-1114); and administration and enforcement

(*id.* §§ 1131-1145). Specifically, with respect to fiduciaries, ERISA not only details the duties

upon them, but it also imposes personal liability for losses caused by breaches of those duties. *Id.* § 1109(a).[1]

35.     As a plan fiduciary and employer, WTSC was a party in interest to the WTSC 401(k) Plan under ERISA §§ 3(14)(A) and (C). *Id.* §§ 1002(3)(14)(A) and (C).

36.     As a plan fiduciary and employer, J.D. Acquisition was a party in interest to the J.D. Acquisition 401(k) Plan under ERISA §§ 3(14)(A) and (C).  29 U.S.C. §§ 1002(3)(14)(A) and (C).

37.     As a plan fiduciary and employer, JJD Industries was a party in interest to the Group Health Plan under ERISA §§ 3(14)(A) and (C).  29 U.S.C. §§ 1002(3)(14)(A) and (C).

38.     29 C.F.R. § 2510.3-102 defines the term "plan assets" with respect to participant contributions as:

> (a)(1) [A]mounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

> (b) *Maximum time period for pension benefit plans.* . . . [I]n no event shall the date determined pursuant to paragraph (a)(1) of this section occur later than the . . . 15th business day of the month following the month in which [the participant contribution or participant loan repayment] amounts would otherwise have been payable to the

_____

[1] 29 U.S.C. § 1109(a) states:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

participant in cash (in the case of amounts withheld by an employer from a participant's wages).

(c) *Maximum time period for welfare benefit plans*. . . . [I]n no event shall the date determined pursuant to paragraph (a)(1) of this section occur later than 90 days from the date on which . . . [the participant contribution] amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from a participant's wages).

39.    Pursuant to this regulation, therefore, the monies withheld from employee wages for contribution to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan were plan assets as of the 15th business day following the month after the monies were deducted.  29 C.F.R. § 2510.3-102(b); *U.S. v. Whiting*, 471 F.3d 792, 799 (7th Cir. 2006); *Solis v. Hartmann*, 2012 WL 3779050 at *6 (N.D. Ill. Aug. 31, 2012) (*citing* 29 C.F.R. § 2510.3-102; *Whiting*, 471 F.3d at 799)).

40.    Pursuant to this regulation, the monies withheld from employee wages for contribution to the Group Health Plan were plan assets as of the 90th day following the day the monies were withheld by the employer from the participant's wages.  29 C.F.R. § 2510.3-102(c); *Hartmann*, 2012 WL 3779050 at *8.

**FIDUCIARY STATUS UNDER ERISA**

41.    ERISA § 3(21)(A) provides in relevant part that "a person is a fiduciary with respect to a plan to the extent:

(i) he exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

29 U.S.C. § 1002(21)(A).  ERISA § 3(21)(A), therefore, imposes fiduciary responsibilities both on those who have been empowered to act and on those who in fact exercise authority. *Farm*

*King Supply v. Edward D. Jones & Co.,* 884 F.2d 288, 292 (7th Cir. 1989); *Leigh v. Engle,* 727

F.2d 113, 134 n. 33 (7th Cir. 1984) (Congress intended that it not be limited just to persons and

entities formally designated as fiduciaries); *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th

Cir. 1992); *Mertens v. Hewitt Assocs.*, 113 S.Ct. 2063, 2071 (1993).

42.     As the Seventh Circuit has noted, "[t]he measure of whether a person is a

fiduciary is not whether that person is formally designated as such. Instead, a fiduciary should

be viewed 'in functional terms of control and authority over the plan.'" *Ruiz v. Continental*

*Casualty Co.*, 400 F.3d 986, 990 (7th Cir. 2005) (*quoting Mertens v. Hewitt Assocs.*, 508 U.S.

248, 262 (1993)). This expansive definition of "fiduciary" is at the core of the remedial scheme

contemplated by Congress when ERISA was enacted. *See Blatt v. Marshall & Lassman*, 812

F.2d 810, 812 (2d Cir. 1987) ("[T]he definition includes persons who have authority and

responsibility with respect to the matter in question, regardless of their formal title.") (*quoting*

H.R. Rep. No. 93-1280, 93rd Cong., 2d Sess, *reprinted in* 1974 U.S.Code Cong. & Admin.

News, 4639, 5038, 5103).

43.     With this test, courts examine whether a person performed the functions of a

fiduciary, for example, by exercising control over plan assets or the administration of the plan.

The courts, including the Seventh Circuit, have routinely held officers and directors liable as

fiduciaries when they exercise control over the management and investment of plan assets or the

administration of the plan. *Leigh v. Engle,* 727 F.2d at 134; *Keach v. U.S. Trust Co., N.A.*, 256

F.Supp.2d 828, 831 (C.D. Ill. 2003). As noted by the Ninth Circuit, it was ERISA's purpose to

"assur[e] that people who have practical control over an ERISA plan's money have fiduciary

responsibility to the plan's beneficiaries . . . ." *IT Corp. v. General Am. Life Ins. Co.*, 107 F.3d

1415 (9th Cir. 1997). For this reason, the Courts of Appeals have held that all persons who

exercise control over plan assets are fiduciaries, regardless of whether plan documents formally designate them as plan fiduciaries. *See e.g., Briscoe v. Fine*, 444 F. 3d 478, (6th Cir. 2006); *Chao v. Day*, 436 F. 3d 234 (D.C. Cir. 2006) (broker who invoiced plans for phantom insurance policies and deposited the plans' premium payments into his corporate account); *Yeseta v. Baima*, 837 F.2d 380, 385-86 (9th Cir. 1988) (power over withdrawals from plan confers fiduciary status on a person not designated as fiduciary by plan); *LoPresti v. Terwilliger*, 126 F.3d 34, 39-40 (2d Cir. 1997) (officer and owner of closely-held corporation who commingled plan assets with company funds and decided which creditors would be paid held to be a fiduciary); *Patelco Credit Union v. Shani*, 262 F.3d 897, 909 (9th Cir. 2001) (premiums paid into account controlled by broker); *Grizzle*, 933 F.2d at 947 (11th Cir.) (employer became fiduciary by misappropriating employee contributions to plan).

44.    Defendant was a functional fiduciary of the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan. Defendant exercised discretionary control and authority over the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan by causing WTSC and J.D. Acquisition to retain employee contributions they withheld from their respective employees' pay in their own general assets and failing to ensure that the amounts were remitted and timely remitted to the WTSC 401(k) Plan and J.D. Acquisition 401(k) Plan. As an authorized signatory, Defendant controlled the corporate accounts of WTSC and J.D. Acquisition, and he was responsible for determining what creditors would be paid by WTSC and J.D. Acquisition. Thus, Defendant was a fiduciary to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan under ERISA § 3(21)(A)(i). 29 U.S.C. § 1002(21)(A)(i); *Terwilliger*, 126 F.3d at 39-40.

45.    Defendant exercised discretionary control and authority over the Group Health Plan by causing each of the Related Companies to retain employee contributions they withheld

from the Related Companies' employees' pay in their own general assets and failing to ensure

that the amounts were remitted to the Group Health Plan or to Blue Cross Blue Shield of Illinois

for the payment of premiums. As an authorized signatory, Defendant controlled the corporate

accounts of the Related Companies, and he was responsible for determining what creditors

would be paid by the Related Companies. Thus, Defendant was a fiduciary to the Group Health

Plan under ERISA § 3(21)(A)(i). 29 U.S.C. § 1002(21)(A)(i); *Terwilliger*, 126 F.3d at 39-40.

### ERISA § 403 VIOLATIONS

46.      ERISA § 403 provides that all assets of an employee benefit plan shall be held in

trust, shall never "inure to the benefit" of the employer and shall be held for the exclusive

purpose of providing benefits to participants in the plan. *See* 29 U.S.C. §§ 1103(a) and (c)(1).

Defendant violated ERISA §§ 403(a) and (c)(1) with respect to the WTSC 401(k) Plan and the

J.D. Acquisition 401(k) Plan. As a result of Defendant's failure to remit and timely remit

employee salary deferrals to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan, those

withheld monies became Plan assets subject to ERISA's fiduciary requirements by operation of

the Secretary's regulation at 29 C.F.R. § 2510.3-102. Accordingly, Defendant violated ERISA

§§ 403(a) and (c)(1) when he allowed WTSC and J.D. Acquisition to retain the employee salary

deferrals in the respective companies' general assets. 29 U.S.C. §§ 1103(a) and (c)(1); *Solis v.*

*Hartmann*, 2012 WL 3779050 at*7.

47.      Defendant violated ERISA § 403(c)(1) with respect to the Group Health Plan.

ERISA § 403 provides that assets of an employee benefit plan shall never "inure to the benefit"

of the employer and shall be held for the exclusive purpose of providing benefit to participants in

the plan. *See* 29 U.S.C. § 1103 (c)(1). As a fiduciary of the Group Health Plan, Defendant

violated ERISA § 403(c)(1) by failing to remit employee contributions to the Group Health Plan

13

or the insurance carrier providing benefits under the Group Health Plan and allowing the Related

Companies to retain these plan assets in the Related Companies' general assets.  29 U.S.C. §

1103(c)(1); *Hartmann*, 2012 WL 3779050 at *9.

### ERISA § 404 VIOLATIONS

48.      ERISA § 404(a)(1) requires fiduciaries to discharge their duties with respect to

ERISA-covered plans solely in the interests of participants.  29 U.S.C. § 1104(a)(1).  ERISA

applies to fiduciaries "strict standards of trustee conduct, also derived from the common law of

trusts — most prominently, a standard of loyalty and a standard of care."  *Central States, S.E. &

S.W. Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570-71 (1985).  The duty of

loyalty imposed on fiduciaries by ERISA § 404(a)(1)(A) requires fiduciaries to act with

"complete and undivided loyalty" to plan participants and beneficiaries with an "eye single" to

their interests.  *Leigh v. Engle,* 727 F.2d at 125 (*quoting Freund v. Marshall & Ilsley Bank*, 485

F.Supp. 629, 639 (W.D. Wis. 1979) and *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.

1981)).  The duty of care imposed on fiduciaries by ERISA § 404(a)(1)(B) requires that

fiduciaries "'discharge [their] duties with respect to a plan . . . with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity

and familiar with such matters would use in the conduct of an enterprise of a like character and

with like aims.'" *Central States,* 472 U.S. at 571 (*quoting* 29 U.S.C. § 1104(a)(1)(B)).  The

duties of loyalty and care include the requirement that plan fiduciaries ensure that participant

contributions are remitted and timely remitted to the plan.  The clearest violation of these

requirements occurs where a fiduciary has acted for his personal interest or for that of the plan

sponsor.  *See, e.g., Marshall v. Kelly*, 465 F.Supp. 341, 350 (W.D. Okla. 1978).

49.     In *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447 (M.D. Ala. 1992), a case with similar facts to the present, the Court found the fiduciaries liable for breaching their duties, stating that diverting employee contributions from a separate plan trust into the company's general assets breached the duties owed by the fiduciaries to the plan participants. *Id.* at 1454.  The Court further found that a fiduciary must not deal with assets of the plan in his or his own interest or for his or his own account but instead must undertake steps to segregate the assets of the plan, deposit the contributions into the plan's fund and notify employees that employee contributions were not being made. *Id.* at 1452-54.  The Court held that a breach of fiduciary duty occurred when the fiduciary retained the deductions in a corporate account instead of a separate account. *Id.* at 1455. *See also Hartmann*, 2012 WL 3779050 at *6.

50.     Defendant breached his fiduciary duties under ERISA § 404(a)(1)(A) with respect to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan by retaining assets of the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan in the general assets of WTSC and J.D. Acquisition for the general operating expenses of the respective companies.  By his conduct, Defendant failed to act in the interests of the participants and for the exclusive purpose of providing benefits, in violation of ERISA§ 404(a)(1)(A).  29 U.S.C. § 1104(a)(1)(A); *Denison*, 804 F.Supp. at 1454; *Hartmann*, 2012 WL 3779050 at *6. *See also PBGC v. Solmsen*, 671 F.Supp. 938, 945-46 (E.D.N.Y. 1987).

51.     Defendant also breached his fiduciary duties under ERISA § 404(a)(1)(A) with respect to the Group Health Plan by retaining assets of the Group Health Plan in the general assets of the Related Companies.  By his conduct, Defendant failed to act in the interests of the participants and for the exclusive purpose of providing benefits, in violation of ERISA § 404(a)(1)(A).  29 U.S.C. § 1104(a)(1)(A); *Hartmann*, 2012 WL 3779050 at *8.

## ERISA § 406 VIOLATIONS

52.     ERISA § 406(a)(1)(D) prohibits a fiduciary from causing the plan to engage in a

transaction if he knows or should know that such transaction constitutes a direct or indirect

transfer to, or use by or for the benefit of, a party in interest.[2] 29 U.S.C. § 1106(a)(1)(D).

According to ERISA's implementing regulations, plan assets include "amounts that a participant

has withheld from his wages by an employer, for contribution to the plan as of the earliest date

on which such contributions can reasonably be segregated from the employer's general assets,"

but not later than the 15th business day following the month after the monies were withheld for

pension benefit plans and not later than the 90th day following the day the monies were withheld

for welfare benefit plans.  29 C.F.R. §§ 2510.3-102(a)-(c).  Courts have similarly defined "plan

assets" to include wages withheld from employees' paychecks for deposit into employee benefit

plans, even though the employer fails to actually remit the contributions to the plan.  *See*

*Whiting,* 471 F.3d at 799 (holding that "employee contributions withheld from employee

paychecks that have not been delivered to their intended benefit plans can be plan assets" under

ERISA); *Grizzle*, 933 F.2d at 947.

53.     The salary deferral contributions deducted from WTSC employees' paychecks

from January 1, 2008, through September 17, 2010, were not remitted to the 401(k) Plan.

Instead, these contributions were retained in WTSC's corporate accounts.  As a consequence,

because Defendant did not ensure that employee contributions were segregated from WTSC's

general assets, WTSC, a party in interest, had effective control over the employee withholdings,

and therefore can be deemed to have been the recipient of a prohibited party in interest transfer

---

[2] ERISA § 406(a)(1)(D), as well as sections 406(b)(1) and (2), are three of several ERISA provisions that
were promulgated by Congress in order to facilitate Congress' remedial interest in protecting employee
benefit plans by creating easily applied "blanket prohibitions."  *Gilliam v. Edwards*, 492 F. Supp. 1255,
1263, (D.N.J. 1980).  *See also Whitfield v. Tomasso*, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988).

of plan assets in violation of ERISA § 406(a)(1)(D). 29 U.S.C. § 1106(a)(1)(D); *Hartmann*,

2012 WL 3779050 at *6- *7. *See generally Donovan v. Williams*, 4 EBC (BNA) 1244, 1245

(N.D. Ohio 1983).

54.     The salary deferral contributions deducted from J.D. Acquisition employees'

paychecks from January 1, 2008, through October 25, 2010, were not remitted to the J.D.

Acquisition 401(k) Plan.  Instead, these contributions were retained in J.D. Acquisition's

corporate accounts.  As a consequence, because Defendant did not ensure that employee

contributions were segregated from J.D. Acquisition's general assets, J.D. Acquisition, a party in

interest, had effective control over the employee withholdings, and therefore can be deemed to

have been the recipient of a prohibited party in interest transfer of plan assets in violation of

ERISA § 406(a)(1)(D).  29 U.S.C. § 1106(a)(1)(D); *Hartmann*, 2012 WL 3779050 at *6- *7.

*See generally Williams*, 4 EBC (BNA) at 1245.

55.     The salary deferral contributions deducted from Akorat/Smithco employees'

paychecks from May 6, 2010, through August 20, 2010, were not remitted to the Group Health

Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.  Instead,

Akorat/Smithco retained in its own general assets the withheld employee contributions.  As a

consequence, because Defendant did not ensure that employee contributions were segregated

from Akorat/Smithco's general assets, Akorat/Smithco, a party in interest, had effective control

over the employee withholdings, and therefore can be deemed to have been the recipient of a

prohibited party in interest transfer of plan assets in violation of ERISA § 406(a)(1)(D).  29

U.S.C. § 1106(a)(1)(D); *Hartmann*, 2012 WL 3779050 at *8.  *See generally Williams*, 4 EBC

(BNA) at 1245.

17

56.     The salary deferral contributions deducted from J.D. Acquisition employees'

paychecks from April 5, 2010, through August 20, 2010, were not remitted to the Group Health

Plan or Blue Cross Blue Shield of Illinois for the payment of premiums. Instead, J.D.

Acquisition retained in its own general assets the withheld employee contributions. As a

consequence, because Defendant did not ensure that employee contributions were segregated

from J.D. Acquisition's general assets, J.D. Acquisition, a party in interest, had effective control

over the employee withholdings, and therefore can be deemed to have been the recipient of a

prohibited party in interest transfer of plan assets in violation of ERISA § 406(a)(1)(D). 9 U.S.C.

§ 1106(a)(1)(D); *Hartmann*, 2012 WL 3779050 at *8. *See generally Williams*, 4 EBC (BNA) at

1245.

57.     The salary deferral contributions deducted from WTSC employee's paychecks

from May 3, 2010, through August 20, 2010, were not remitted to the Group Health Plan or Blue

Cross Blue Shield of Illinois for the payment of premiums. Instead, WTSC retained in its own

general assets the withheld employee contributions. As a consequence, because Defendant did

not ensure that employee contributions were segregated from WTSC's general assets, WTSC, a

party in interest, had effective control over the employee withholdings, and therefore can be

deemed to have been the recipient of a prohibited party in interest transfer of plan assets in

violation of ERISA § 406(a)(1)(D). 9 U.S.C. § 1106(a)(1)(D); *Hartmann*, 2012 WL 3779050 at

*8. *See generally Williams*, 4 EBC (BNA) at 1245.

58.     The salary deferral contributions deducted from Pavo/Injection Plastics

employees' paychecks from September 3, 2010, through September 17, 2010, were not remitted

to the Group Health Plan or Blue Cross Blue Shield of Illinois for the payment of premiums.

Instead,  Pavo/Injection Plastics retained in its own general assets the withheld employee

contributions. As a consequence, because Defendant did not ensure that employee contributions were segregated from Pavo/Injection Plastics's general assets, Pavo/Injection Plastics, a party in interest, had effective control over the employee withholdings, and therefore can be deemed to have been the recipient of a prohibited party in interest transfer of plan assets in violation of ERISA § 406(a)(1)(D). 9 U.S.C. § 1106(a)(1)(D); *Hartmann*, 2012 WL 3779050 at *8. *See generally Williams*, 4 EBC (BNA) at 1245.

59.    ERISA § 406(b)(1) prohibits a fiduciary from dealing with the assets of a plan in his own interest or for his own account. 29 U.S.C. § 1106(b)(1). Defendant's retention of employee contributions in the Related Companies' general assets is a clear example of self-dealing. The retention of withheld employee contributions in the Related Companies' general assets clearly resulted in the direct financial gain to each of the Related Companies and an indirect financial gain to Defendant, the president of WTSC, J.D. Acquisition, and JJD Industries and co-owner of all of the Related Companies. 29 U.S.C. § 1106(b)(1); *Hartmann*, 2012 WL 3779050 at *7, *8-*9. *See also Lowen v. Tower Asset Management*, 829 F.2d 1209, 1214 (2d Cir. 1987); *Solmsen*, 671 F.Supp. at 946.

60.    ERISA § 406(b)(2) prohibits a fiduciary from acting in any transaction on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. 29 U.S.C. § 1106(b)(2). The other party's adverse interest does not mean that the "interests [must] be antithetical, but only that they are different." *Sandoval v. Simmons,* 622 F. Supp. 1174 (C.D. Ill. 1985). *See also Cutaiar v. Marshall*, 590 F.2d 523 (3d Cir. 1983); *Reich v. Compton* 57 F.3d 270 (3rd Cir. 1995); *Donovan v. Mazzola*, 716 F.2d. 1226 (9th Cir. 1983); *Martin v. National Bank of Alaska*, 828 F.Supp. 1427 (D. Alaska 1992). Accordingly, as with the ERISA § 406(b)(1) violation, the status of WTSC, J.D. Acquisition, and the Related

Companies as the recipient of employee salary deferrals, and Defendant's status as the president

of WTSC, J.D. Acquisition, and JJD Industries and co-owner of all of the Related Companies,

prohibited Defendant from participating in the decision to keep the assets of the Plans in the

Related Companies' general assets. In allowing the Plans' assets to be retained in Related

Companies' general assets for use in the general operation of the Related Companies, Defendant

operated on both sides of the transactions – his interest in the Related Companies was in direct

conflict with his duties to maintain the assets of the Plans. *Hartmann*, 2012 WL 3779050 at *7,

*9.

> **C.    Defendant engaged in an act of defalcation and thus his debt to the Plans cannot be discharged.**

61.    11 U.S.C. § 523(a)(4) provides that a discharge under section 727 of the

Bankruptcy Code "does not discharge an individual debtor from any debt– . . . for fraud or

defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . ." 11 U.S.C. §

523(a)(4).

62.    "To establish that a debt is non-dischargeable under [11 U.S.C.] section

523(a)(4), a creditor must show (1) that the debtor acted as a fiduciary to the creditor at the time

the debt was created, and (2) that the debt was caused by fraud or defalcation." *In re Berman*,

629 F.3d 761, 765-66 (7th Cir. 2011) (*citing In re Frain*, 230 F.3d 1014, 1019 (7th Cir. 2000);

*Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987)). In order to establish a fiduciary

obligation, the presence of either an express trust or "certain relationships where the law imposes

fiduciary obligations, such as the obligation an attorney owes to a client or a director owes to

shareholders" is required. *In re Berman*, 629 F.3d at 768 (*citing In re Marchiando*, 13 F.2d

1111, 1115 (7th Cir. 1994); *LSP Investment Partnership v. Bennett (In re Bennett)*, 989 F.2d 779,

784-85 (5th Cir. 1993)). Such fiduciary obligations arise in arrangements "in which someone – a

lawyer for example, or a guardian, or a managing partner – in whom confidence is reposed is entrusted with another person's money for safekeeping." *Marchiando*, 13 F.2d at 1116 (*citing In re Iowa R.R.*, 840 F.2d 535, 541-45 (7th Cir. 1988)). *See also In re McCarthy*, 350 B.R. 820, 834 (Bankr. N.D. Ind. 2006) ("The terms of a contract, statute, or ordinance may create a fiduciary relationship if those terms set forth real attributes creating a trust-like relation and are not just labels applied by the ordinance.") (*citing In re McGee*, 353 F.3d 537, 540-41) (7th Cir. 2003)).

63.     "Defalcation can be distinguished from fraud and embezzlement on the basis that subjective deliberate wrongdoing is not required to establish defalcation, though some degree of fault is required." *Berman*, 629 F.3d at 765 n.3 (*citing Central Hanover Bank & Trust Co. v. Hisbst*, 93 F.2d 510, 512 (2d Cir. 1937) (L. Hand, J.)). The Seventh Circuit "[has] held that defalcation requires something more than negligence or mistake, but less than fraud." *Id.* (*citing Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994)).

64.     Thus, the threshold inquiry is whether Defendant owed the Plan and its participants "a fiduciary obligation through the presence of either an express trust or an implied fiduciary status . . . ." *Id.* at 769.  Courts generally accept that when a debtor served as a fiduciary to the creditor, prior to any alleged wrong, then the debtor is a fiduciary for purposes of § 523(a)(4). *See In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) (recognizing this "well-established principle"); *see also In re Marchiando*, 13 F.3d at, 1116 (holding that a fiduciary relationship qualifies under § 523(a)(4) when it "imposes real duties in advance of the breach.").

65.     "In major respects, ERISA dictates bear the hallmarks of a trust.  Indeed, the Supreme Court has observed that the common law of trusts governs the interpretation of many aspects of ERISA." *In re Jacobs*, 403 B.R. 565, 578 (Bankr. N.D. Ill. 2009) (*citing Varity Corp.*

*v. Howe,* 516 U.S. 489, 497 (1996); *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110

(1989)). "The funds withdrawn from employee paychecks represent an amount of money paid to

employees in compensation. Once the contributions are withheld, the money no longer belongs

to the company; rather, the funds belong to the employees." *Whiting*, 471 F.3d at 799. Thus,

"[t]he employee participants are equivalent to beneficiaries of the trust." *In re Jacobs*, 403 B.R.

at 578 (*citing Firestone Tire and Rubber Co.*, 489 U.S. at 110).

66.     The WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan were trusts within

the meaning of § 523(a)(4) because they held the assets of employee benefit plans within the

meaning of ERISA. "The trust res is identified by the creation of the plan itself." *In re*

*Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001) (*citing* 29 U.S.C. § 1102). Thus, Defendant was

a fiduciary for purposes of § 523(a)(4) to the WTSC 401(k) Plan and the J.D. Acquisition 401(k)

Plan prior to and at the time the debts were created.

67.     Although the Group Health Plan did not involve an express trust, Defendant had a

fiduciary relationship to the Group Health Plan because of his role as an ERISA fiduciary with

respect to the Group Health Plan's assets and because of the inequity in power between the

Group Health Plan participants and Defendant. As the Court found in *In re Jacobs*, once

contributions to an ERISA-covered plan become plan assets, "ERISA fiduciary trust duties have

undoubtedly kicked in" and therefore, the ERISA fiduciary is a fiduciary for purposes of §

523(a)(4). *In re Jacobs*, 403 B.R. at 580. Thus, Defendant's fiduciary responsibilities under

ERISA are sufficient to make him a fiduciary to the Group Health Plan under § 523(a)(4).

68.     Furthermore, the Seventh Circuit has recognized that apart from an express trust,

a person may be a fiduciary for purposes of § 523(a)(4) when there is an imbalance of power

whereby the party with less power is unable to monitor the other's actions. *In re Marchiando*, 13

F.2d at 1116. *See also In re Berman*, 629 F.3d at 769-772. Defendant's control over the corporate accounts of the Related Companies, his authority to decide which creditors would be paid from the corporate accounts, and the Group Health Plan's participants' reliance on Defendant to remit their withheld contributions to the insurance carrier gave Defendant an imbalance of power sufficient to make him a fiduciary to the Group Health Plan under § 523(a)(4). *See In re Marchiando*, 13 F.3d at 1116; *In re Berman*, 629 F.3d at 769-772

69.     As previously noted, ERISA  provides that all assets of an employee benefit plan shall be held in trust, shall never "inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefit to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." *See* 29 U.S.C. §§ 1103(a), (c)(1); *id.* § 1104(a)(1).

70.     As a fiduciary of the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan since 2008, Defendant owed the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan fiduciary obligations under ERISA that imposed the real duties of loyalty and care at the time of Defendant's incurring a debt to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan. Included within the duties of loyalty and care, Defendant was required to ensure the remittance and timely remittance of employee contributions to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan. Defendant breached those duties, resulting in losses to the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan. Defendant's failure to ensure the remittance and timely remittance of employee contributions he WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan to as described in paragraphs 5 through 8 and 12 through 15 above constitutes a defalcation by Defendant while acting in a fiduciary capacity for the WTSC 401(k) Plan and the J.D. Acquisition 401(k) Plan, therefore, all amounts owed to the WTSC 401(k) Plan and the J.D.

Acquisition 401(k) Plan until the order for relief was entered are non-dischargeable under the provisions of 11 U.S.C. § 523(a)(4).

71.     As a fiduciary to the Group Health Plan, Defendant owed to the Group Health Plan fiduciary obligations under ERISA that imposed the real duties of loyalty and care at the time of Defendant's incurring a debt to the Group Health Plan.  Included within the duties of loyalty and care, Defendant was required to ensure the remittance of employee contributions to the Group Health Plan or the insurance carrier providing benefits under the Group Health Plan. 29 U.S.C. §1103(c)(1); *Hartmann*, 2012 WL 3779050 at *9.  Defendant breached those duties, resulting in losses to the Group Health Plan.  Defendant's failure to ensure the remittance employee contributions to the Group Health Plan or the insurance carrier providing benefits under the Group Health Plan as described in paragraphs 20 through 27 above constitutes a defalcation by Defendant while acting in a fiduciary capacity for the Group Health Plan, therefore, all amounts owed to the Group Health Plan until the order for relief was entered are non-dischargeable under the provisions of 11 U.S.C. § 523(a)(4).

## CONCLUSION

JUDGMENT ~~IS HEREBY~~ *will separately be* ENTERED against defendant John Dombek III in accordance with the prayer of the complaint in the above-styled action; and ~~it is~~

~~ORDERED, ADJUDGED, AND DECREED~~ that the amount of $67,217.74 in monies owed the Plans constituting unremitted and untimely remitted withheld employee contributions and associated lost opportunity costs is non-dischargeable under 11 U.S.C. § 523(a)(4) in the following amounts:

A.     Defendant's debt of $21,430.07 owed to the Wisconsin Tool and Stamping Company 401(k) Profit Sharing Plan and Trust;

24

12-00565:17.0:Proposed Order:Main Document Entered: 10/4/2012 2:45:46 PM by:Kevin Wilemon Page 25 of 26

B.    Defendant's debt of $2,149.13 owed to the J.D. Acquisition 401(k) Profit Sharing

Plan and Trust; and

C.    Defendant's debt of $43,638.54 owed to the JJD Industries Group Health Plan.

Dated: _____, 2012

JACK B. SCHMETTERER
UNITED STATES BANKRUPTCY JUDGE

Prepared by:

Kevin M. Wilemon
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn St., Room 844
Chicago, IL 60604

WHEREFORE, for the reasons stated, the Secretary prays that her Motion for Default

Judgment be granted.

Dated: October 4, 2012

**M. PATRICIA SMITH**
Solicitor of Labor

**JANET M. GRANEY**
Acting Regional Solicitor

   /s/ Kevin M. Wilemon
**KEVIN M. WILEMON**
Attorney

P.O. Address:
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn Street
Eighth Floor

Attorneys for Hilda L. Solis,
Secretary of Labor, United
States Department of Labor,
Plaintiff

Chicago, Illinois 60604
Telephone: (312) 353-6973
wilemon.kevin@dol.gov
IL Bar No. 6301185